1 | David L. Evans (State Bar No. 155634)
Rebecca L. Worden (State Bar No. 270464)
2 | **HAMRICK & EVANS, LLP**
111 Universal Hollywood Drive, Suite 2200
3 | Universal City, California 91608
Telephone No.: (818) 763-5292
4 | Fax No.: (818) 763-2308
Attorneys for Plaintiffs
5 | AMERICEUTICALS, LLC and
VITALITY INSTITUTE MEDICAL
6 | PRODUCTS, INC.

7 | Thomas A. Hodge (Tennessee BPR No. 002074)
**BAKER DONELSON BEARMAN,**
8 | **CALDWELL & BERKOWITZ, PC**
265 Brookview Centre Way, Suite 600
9 | Knoxville, TN 37919
Attorneys for Plaintiff
10 | AMERICEUTICALS, LLC

11

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

14 | AMERICEUTICALS, LLC, a Georgia Limited Liability Company; VITALITY INSTITUTE MEDICAL PRODUCTS, INC., a Florida Limited Liability Company,

Plaintiffs,

v.

NAFEH SEBAI, an individual; BELLA MEDICAL PRODUCTS, LLC, a Delaware Limited Liability Company; SEAGRASS PHARMACY, a business entity form unknown; and DOES 1 through 30, inclusive,

Defendants.

Case No.: CV13-000283-PA (JEMx)

(Assigned to Honorable Percy Anderson)

**PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF E. RONALD FINGER, M.D.; DECLARATION OF MARYA KHALIL; DECLARATION OF DAVID L. EVANS; [PROPOSED] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE**

*Ex Parte* Hearing:
*Ex Parte* Hearing Time:
*Ex Parte* Hearing Department:

OSC Hearing:
OSC Hearing Time:
OSC Hearing Department:
Complaint Filed: January 14, 2013

-1-

HAMRICK & EVANS, LLP

1　**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL:**

2　　**PLEASE TAKE NOTICE THAT** Plaintiffs AMERICEUTICALS, LLC and

3　VITALITY INSTITUTE MEDICAL PRODUCTS, INC. (collectively "Plaintiffs")

4　will, and hereby do, apply *ex parte* for the following:

5　　1.　An Order to Show Cause why Defendants NAFEH SEBAI, BELLA

6　MEDICAL PRODUCTS, LLC, and SEAGRASS PHARMACY (collectively,

7　"Defendants"), and each of them, and their officers, agents, employees, and those in

8　active concert or participation with them, should not be restrained and enjoined,

9　pending final disposition of this action, from:

10　　　(a)　using the registered "PERFECT PEEL" trademark or any other

11　　confusingly similar mark in connection with the manufacture, production,

12　　marketing, advertising, distribution, offering for sale, or sale of goods not

13　　originating from Plaintiffs or authorized by Plaintiffs;

14　　　(b)　representing in any manner or by any method whatsoever that

15　　goods provided by Defendants are sponsored by, approved by, authorized by,

16　　or originate from Plaintiffs, or from otherwise taking any action likely to

17　　cause confusion, mistake or deception as to the origin, approval, sponsorship,

18　　or certification of such goods; or

19　　　(c)　unfairly competing with Plaintiffs in any manner; and

20　　2.　An Order, pending hearing on the above Order to Show Cause,

21　restraining and enjoining Defendants, and each of them, and their officers, agents,

22　employees, and those in active concert or participation with them, from:

23　　　(a)　using the registered "PERFECT PEEL" trademark or any other

24　　confusingly similar mark in connection with the manufacture, production,

25　　marketing, advertising, distribution, offering for sale, or sale of goods not

26　　originating from Plaintiffs or authorized by Plaintiffs;

27　　　(b)　representing in any manner or by any method whatsoever that

28　　goods provided by Defendants are sponsored by, approved by, authorized by,

HAMRICK & EVANS, LLP

-2-

1  or originate from Plaintiffs, or from otherwise taking any action likely to

2  cause confusion, mistake or deception as to the origin, approval, sponsorship,

3  or certification of such goods; or

4  (c)  unfairly competing with Plaintiffs in any manner.

5  This Application is made pursuant to Lanham Trademark Act of 1946, 15

6  U.S.C. § 1051, et seq., Federal Rules of Civil Procedure, Rule 65, Local Civil Rules,

7  Rule 65-1, and the Standing Order for this Court. This Application is made on the

8  grounds that Defendants' acts of willful and ongoing infringement, misappropriation

9  and dilution of the registered "PERFECT PEEL" trademark owned by Plaintiff

10 AMERICEUTICALS, LLC, and exclusively licensed to Plaintiff VITALITY

11 INSTITUTE MEDICAL PRODUCTS, INC., threaten to irreparably harm Plaintiffs'

12 valuable rights, and necessitate the ordering of injunctive relief to preserve the status

13 quo pending disposition of this matter.

14 As Defendants' infringement of the registered "PERFECT PEEL" trademark

15 is ongoing and the damage to Plaintiffs' rights is continuing, an expedited

16 determination by the Court is required since time does not permit a motion to be

17 heard on regular notice to resolve all of these issues.

18 Notice of this Application was provided to counsel for Defendants, Matthew

19 Pahl, Esq., at COOKSEY, TOOLEN, GAGE, DUFFY & WOOG, P.C., 535 Anton

20 Boulevard, Tenth Floor, Costa Mesa, California 92626-1977, (714) 431-1100.

21 Counsel for Defendants indicated that they intend to oppose this Application.

22 This Application is based upon: (1) the Complaint, records, and pleadings on

23 file in this matter; (2) the attached Memorandum of Points and Authorities in

24 Support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order and

25 Order to Show Cause; (3) the Declarations of E. Ronald Finger, M.D., Marya

26 Khalil, and David L. Evans filed herewith; (4) all other written documents on file in

27 this action, together with such additional evidence as may be offered at the hearing.

28

HAMRICK & EVANS, LLP

1 | DATED:  April 23, 2013

HAMRICK & EVANS, LLP

By: _____

DAVID L. EVANS
REBECCA L. WORDEN
Attorneys for Plaintiffs
AMERICEUTICALS, LLC and
VITALITY INSTITUTE MEDICAL
PRODUCTS. INC.

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE

# **TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ……………………………………....... 1

II.  FACTUAL BACKGROUND…………………………………… …. 1

   A. Plaintiffs' Use of the "PERFECT PEEL" Mark in Commerce ……. 1

   B. Registration and Licensing of the "PERFECT PEEL" Mark …….. 2

   C. Defendants' Infringing Use of the "PERFECT PEEL" Mark

      and Other Acts of False Advertising …………………………… 3

   D. Cease and Desist Communications . …………………………… 4

III. PRELIMINARY INJUNCTIVE RELIEF IS PROPER ……………….. 5

   A. Likelihood of Success on the Merits: Trademark

      Infringement and Unfair Competition Claims Under

      Lanham Act …………………………………………………… 6

      1. Plaintiff Americeuticals' Ownership of a Valid,

         Protectable Mark …………………………………………. 7

      2. Defendants' Use in Commerce of the Same Mark for

         the Same Class of Goods is Likely to Cause Consumer

         Confusion ………………………………………………… 8

         i. Similarity of the Marks ……………………………… 9

         ii. Relatedness of the Goods ………………………….... 10

         iii. Simulataneous Use of the Internet for Marketing ………..11

   B. Injunctive Relief is Warranted …………………………… 11

      1. Irreparable Harm …………………………………………12

      2. Inadequacy of Remedies at Law …………………………… 13

      3. Balance of Hardships …………………………………… 13

      4. Public Interest …………………………………………… 14

IV.  WAIVER OF BOND IS APPROPRIATE ……………………………… 15

V.   CONCLUSION …………………………………………………… 16

-i-

HAMRICK & EVANS, LLP

## TABLE OF AUTHORITIES

Page

**Cases**

*AMF, Inc. v. Sleekcraft Boats*

    599 F.2d 341, 348-49 (9th Cir. 1979) …………………………………… 8

*Brookfield Communications, Inc. v. W.Coast Entm't Corp.*

    174 F.3d 1036, 1046 (9th Cir. 1999) ………………………… 5,6,7,8,9,11,12

*Century 21 Real Estate Corp. v. Sandlin*

    846 F.2d 1175, 1180 (9th Cir. 1988) …………………………………. 13

*CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*

    617 F.Supp. 2d 1051, 1081 (E.D. Cal. 2009) ………………………… 13,14, 15

*Diaz v. Brewer*

    656 F.3d 1008, 1015 (9th Cir. 2011) …………………………………… 15

*eBay Inc. v. MercExchange, L.L.C.*

    547 U.S. 388, 391 (2006) …………………………………………… 12

*Fleischmann Distilling Corp. v. Maier Brewing Co.*

    314 F.2d 149, 153-55 (9th Cir. 1963) …………………………………… 10

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*

    618 F.3d 1025, 1030-31 (9th Cir. 2010) ………………………………… 8

*Glow Indus., Inc. v. Lopez*

    252 F. Supp.2d 962, 974-75 (C.D. Cal. 2002) ………………………… 5,6

*GoTo.com Inc. v. Walt Disney Co.,*

    202 F.23d 1199, 1205 (9th Cir. 2000) ……………………… 8,9,10,11,12,14

*Mattel, Inc. v. Walking Mountain Productions*

    353 F.3d 792 (9th Cir. 203) …………………………………………….. 8

*Maxim Integrated Products, Inc. v. Quintana*

    654 F.Supp.2d 1024, 1032 (N.D. Cal. 2009) ………………………… 10,14

*Metro Pub., Ltd. V. San Jose Mercury News*

    987 F.2d 637 (9th Cir. 1993) …………………………………………… 12

HAMRICK & EVANS, LLP

## TABLE OF AUTHORITIES

Page

1    *Morales v. Trans World Airlines, Inc.*

2       504 U.S. 374, 381, 112 S.Ct. 2031 (1992) .......................................   13

3    *Moroccanoil, Inc. v. Moroccan Gold, LLC*

4       590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008) ..............................   5

5    *Opticians Ass'n of Am. v. Indep. Opticians of Am.*

6       90 F. 2d 187, 198 (3rd Cir. 1990) ..............................................   5

7    *Philip Morris USA Inc. v. Liu*

8       489 F.Supp.2d 1119, 1121-22 (C.D. Cal 2007) ...........................   6

9    *Roe v. Anderson*

10       134 F.3d 1400 (9th Cir. 1998) ....................................................   12

11    *Syntek Semiconductor Co. v. Microchip Tech. Inc.*

12       307 F.3d 775, 781 (9th Cir. 2002) ..............................................   7

13    *Tillamook County v. U.S. Army Corps of Engineers*

14       288 F. 3d 1140, 1143 (9th Circ. 2002) ........................................   5

15    *Triad Sys. Corp. v. Southeastern Exp. Co.*

16       64 F.3d 1330, 1338 (9th Cir. 1995) ............................................   13

17    *Weinberger v. Romero-Barcel*

18       456 U.S. 305, 320 (1982) .........................................................   5

19    **Statutes**

20    Lanham Trademark Act of 1946

21       15 U.S.C. §1115...........................................................   7

22       15 U.S.C. §1116... .....................................................   5

23       17 U.S.C. §410(c) ......................................................   7

24    **Other**

25    Ninth Circuit Model Civil Jury Instructions,

26       Instruction 15.0 [Plaintiff's Burden of Proof] ..............................   6

27

28

-iii-

HAMRICK & EVANS, LLP

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**PRELIMINARY STATEMENT**

Injunctive relief is necessary to protect Plaintiffs AMERICEUTICALS, LLC ("Americeuticals") and VITALITY INSTITUTE MEDICAL PRODUCTS, INC. ("Vitality") (collectively "Plaintiffs") from the ongoing damage resulting from acts of trademark infringement and unfair competition being carried out by Defendants NAFEH SEBAI ("Sebai"), BELLA MEDICAL PRODUCTS, LLC ("Bella Medical"), and SEAGRASS PHARMACY (collectively "Defendants"). Defendants are presently using Plaintiffs' registered federal trademark, "PERFECT PEEL", to designate Defendants' competing—and inferior—goods and services, without authorization of any sort and in direct violation of Plaintiffs' exclusive right to use the registered "PERFECT PEEL" mark in commerce. If not enjoined, Defendants' conduct will continue to cause Plaintiffs irreparable harm by tarnishing and diluting the value and goodwill of the registered "PERFECT PEEL" mark, which only Plaintiffs are lawfully permitted to use.

**II.**

**FACTUAL BACKGROUND**

This action arises out of Defendants' unauthorized use of the registered "PERFECT PEEL" mark on their skin care products. The "PERFECT PEEL" is a registered U.S. Trademark that is owned by Plaintiff Americeuticals and is exclusively licensed to Plaintiff Vitality. Defendants are using the registered "PERFECT PEEL" trademark on precisely the same type of goods (dermatological skin peel products) that are sold by Plaintiffs.

**A. Plaintiffs' Use of the "PERFECT PEEL" Mark in Commerce**

Plaintiff Americeuticals and Vitality are in the business of developing, marketing, and selling professional skin care products. Declaration of E. Ronald Finger, M.D., in Support of Plaintiffs' *Ex Parte* Application for Temporary

-1-

HAMRICK & EVANS, LLP

1   Restraining Order and Order to Show Cause ("Finger Decl.") at ¶ 2; Declaration of
2   Marya Khalil, in Support of Plaintiffs' *Ex Parte* Application for Temporary
3   Restraining Order and Order to Show Cause ("Khalil Decl.") at ¶ 2. The products
4   formulated and marketed by Plaintiffs include chemical peel products. *Id.* Plaintiffs'
5   chemical peel products combine powerful acids and various other ingredients for
6   application to the face, neck, and hands by qualified skin care professionals. *Id.* The
7   products are designed to give skin a more youthful and even appearance by reducing
8   the appearance of wrinkles, scarring, age spots, sun damage, melasma, and acne. *Id.*

9   In or around October of 2000, Savannaceuticals LLC[1] ("Savannaceuticals"),
10  an affiliate of Plaintiff Americeuticals, began using the "PERFECT PEEL" mark to
11  designate the skin peel products marketed by Savannaceuticals, and to distinguish
12  these products from items sold by competitors. Finger Decl. at ¶ 3. This chemical
13  peel line is advertised by use of the "PERFECT PEEL" mark, and the products
14  themselves are packaged in containers labeled with the "PERFECT PEEL" mark,
15  using conventional font in red, often featured below the Americeuticals "New
16  Youth" logo, surrounded by a blue circle. Finger Decl. at ¶ 3; Exhibit "A" to Finger
17  Decl. Presently, the "PERFECT PEEL" products are marketed by Plaintiff
18  Americeuticals to dermatologists and other qualified professionals via the website
19  "newyouthskincare.com." Finger Decl. at ¶ 2; Exhibit "A" to Declaration of David
20  L. Evans in Support of Plaintiffs' *Ex Parte* Application for Temporary Restraining
21  Order and Order to Show Cause ("Evans Decl.").

22  **B. Registration and Licensing of the "PERFECT PEEL" Mark**

23  On November 11, 2008, the "PERFECT PEEL" mark was registered with the
24  United States Patent and Trademark Office ("USPTO") by Savannaceuticals, and
25  assigned Registration No. 3,530,632. Finger Decl. at ¶ 4; Exhibit "B" to Finger

HAMRICK & EVANS, LLP

---

[1] At all times relevant herein, the now-defunct Savannaceuticals was owned by E. Ronald Finger, M.D., a plastic surgeon who also owns Plaintiff Americeuticals. Finger Decl. at ¶ 2.

1　Decl. Thereafter, Savannaceuticals transferred all right, title, and interest in the

2　"PERFECT PEEL" trademark to Plaintiff Americeuticals. Finger Decl. at ¶ 5;

3　Exhibit "C" to Finger Decl. This assignment was recorded with the USPTO in or

4　about March of 2011. Exhibit "C" to Finger Decl.

5　　　Pursuant to its exclusive right to control the use of the registered "PERFECT

6　PEEL" trademark, Americeuticals entered into a license agreement ("License

7　Agreement") with Plaintiff Vitality. Finger Decl. at ¶ 6; Khalil Decl. at ¶ 3. The

8　License Agreement affords Vitality the exclusive right to use the "PERFECT

9　PEEL" mark in commerce, except to the extent that Americeuticals reserved for

10　itself the right to continue to use the mark on its own products. *Id.*

11　　　**C. Defendants' Infringing Use of the "PERFECT PEEL" Mark and**

12　　　**Other Acts of False Advertising**

13　　　Defendant Bella Medical—upon information and belief, the alter ego of

14　Defendants Sebai and Seagrass Pharmacy—is a direct competitor of Plaintiffs, self-

15　described as "a cutting-edge player in the Cosmetic Medical Arena…providing

16　alternatives to surgery while achieving ageless skin." Exhibit "B" to Evans Decl.

17　Like Plaintiffs, one of Defendants' main product lines consists of chemical skin peel

18　treatments. *Id.*

19　　　By press release dated January 24, 2012, Bella Medical announced the launch

20　of its "brand new medical grade chemical peel for skin, available…exclusively to

21　medical clinics and facilities." Exhibit "C" to Evans Decl. The press release

22　indicates that the product first came onto the market in 2011, and that the "exclusive

23　treatment…transforms the skin and corrects such issues as hyper-pigmentation,

24　melasma, rosacea, acne, scarring…help[ing] skin to defy the aging process." *Id.* The

25　product is designed for application to the "face, neck, chest and hands." Exhibit "D"

26　to Evans Decl. The product name: "**The Perfect Peel**."

27　　　The advertising and packaging for Defendants' products consists of the words

28　"THE PERFECT PEEL," printed in conventional font in white, featured below a

-3-

HAMRICK & EVANS, LLP

1 blue circle. *E.g.* Exhibits "B," "C," and "D" to Evans Decl. Defendants' products
2 bearing the registered "PERFECT PEEL" trademark are marketed to dermatologists
3 and other qualified professionals via the website "theperfectpeel.com." Exhibit "B"
4 to Evans Decl.

5 **D. Cease and Desist Communications**

6 In or around the first quarter of 2012, Plaintiff Americeuticals learned of
7 Defendants' infringing use of the "PERFECT PEEL" mark to designate their
8 competing dermatological skin peel products. Finger Decl. at ¶ 7. Plaintiff
9 Americeuticals never consented to Defendants' use of the registered "PERFECT
10 PEEL" mark for any purpose. *Id.*

11 By letter dated May 30, 2012 ("Cease and Desist Letter"), counsel for
12 Plaintiff Americeuticals demanded that Defendants Sebai and Bella cease and desist
13 their acts of infringement and unfair competition. Finger Decl. at ¶ 8; Exhibit "D" to
14 Finger Decl. Specifically, the Cease and Desist Letter demanded as follows: that
15 Defendants immediately cease and desist their infringing use of the "PERFECT
16 PEEL" mark in connection with any of the goods or services offered by Defendants;
17 that Defendants execute and deliver to Americeuticals an assignment of the domain
18 name "www.theperfectpeel.com" and authorization to transfer the domain name;
19 that Defendants destroy all products and printed materials bearing the "PERFECT
20 PEEL" mark and provide certification of such destruction; and that Defendants
21 provide an accounting of all units sold and revenues derived from Defendants' sales
22 of products under the mark "PERFECT PEEL." Exhibit "D" to Finger Decl.

23 Defendants have failed to comply with the Cease and Desist Letter in any
24 fashion, and have continued with their unauthorized use of the registered
25 "PERFECT PEEL" trademark on their products, on their website, and in their
26 marketing and advertising materials, all of which is contrary to Plaintiffs' rights in
27 the mark. Finger Decl. at ¶ 9.

28

HAMRICK & EVANS, LLP

1

## III.

2

## PRELIMINARY INJUNCTIVE RELIEF IS PROPER

3     The Lanham Act provides that the District Court "shall have power to grant

4 injunctions, according to the principles of equity and upon such terms as the court

5 may deem reasonable, to prevent the violation of any right of the registrant of a

6 mark registered in the Patent and Trademark Office [pursuant to Section 32 of the

7 Act] or to prevent a violation under [Section 43 of the Act]." 15 U.S.C.A. § 1116(a).

8 The decision to grant or deny a motion for equitable injunctive relief is committed to

9 the sound discretion of the Court. *Weinberger v. Romero-Barcel,* 456 U.S. 305, 320

10 (1982).

11     In an action alleging violations of Sections 32 and 43 of the Lanham Act,

12 injunctive relief is proper where the moving party has established "either (1) a

13 combination of probable success on the merits and the possibility of irreparable

14 harm, or (2) the existence of serious questions going to the merits, a demonstration

15 that there is at least a fair chance the movant will prevail, and a balance of hardships

16 that tips sharply in the movant's favor." *Glow Indus., Inc. v. Lopez,* 252 F. Supp. 2d

17 962, 974-75 (C.D. Cal. 2002); *see also, e.g., Brookfield Communications, Inc. v. W.*

18 *Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999). These represent extremes

19 on a single continuum; the greater the probability of success on the merits, the less

20 relative hardship must be shown. *Tillamook County v. U.S. Army Corps of*

21 *Engineers,* 288 F.3d 1140, 1143 (9th Cir.2002) ("These are not alternative tests but,

22 instead, are extremes of a single continuum"). In the context of causes of action for

23 trademark infringement and unfair competition, Courts may, in determining whether

24 injunctive relief is proper, also consider the public interest in "not [being] deceived

25 or confused." *Moroccanoil, Inc. v. Moroccan Gold, LLC,* 590 F. Supp. 2d 1271,

26 1282 (C.D. Cal. 2008) (citing *Opticians Ass'n of Am. v. Indep. Opticians of*

27 *Am.,* 920 F.2d 187, 198 (3rd Cir.1990).

28

HAMRICK & EVANS, LLP

1   As set forth herein, and as supported by the Declarations hereto, Defendants

2   have used, and continue to use, the registered "PERFECT PEEL" trademark without

3   permission or authorization. Making matters worse, Defendants are using the mark

4   in connection with precisely the same type of goods sold by Plaintiffs

5   (dermatological skin peel products). Plaintiffs have clearly established a likelihood

6   of success on the merits of their claims, Defendants' infringement is all but certain

7   to irreparably harm Plaintiffs' rights, and both the balance of hardships and the

8   public interest weigh in favor of an order for injunctive relief in this action.

9   **E. Likelihood of Success on the Merits: Trademark Infringement and**

10  **Unfair Competition Claims Under Lanham Act**

11  To prevail on their claims for trademark infringement under Section 32 of the

12  Lanham Act and unfair competition under Section 43 of the Lanham Act, Plaintiffs

13  must demonstrate (1) ownership in a valid, protectable trademark, and (2)

14  Defendants' use of the same or a similar mark which creates a likelihood of

15  confusion in the minds of consumers. *E.g. Philip Morris USA Inc. v. Liu*, 489

16  F.Supp.2d 1119, 1121-22 (C.D. Cal. 2007) ("Plaintiff's first and second claims

17  allege violations under Sections 32 and 43(a) of the Lanham Act. Although they are

18  distinct claims, the elements are essentially identical and the same evidence

19  establishes both claims. Liability is established under both Section 32 and Section

20  43(a) if the plaintiff demonstrates (1) it owns a valid and protectable trademark, and

21  (2) the defendant used in commerce a similar mark without authorization in a

22  manner likely to cause consumer confusion, deception, or mistake."); *see also Glow*

23  *Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 975 (C.D. Cal. 2002); *Brookfield*

24  *Communications, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046 (9th Cir.

25  1999); Ninth Circuit Model Civil Jury Instructions, Instruction 15.0 [Plaintiff's

26  Burden of Proof]. Plaintiffs clearly satisfy these requirements.

27

28

HAMRICK & EVANS, LLP

1

### 1. Plaintiff Americeuticals' Ownership of a Valid, Protectable Mark

2

3    Proof of registration of the mark "shall be *prima facie* evidence of the validity

4    of the registered mark and of the registration of the mark, of the registrant's

5    ownership of the mark, and of the registrant's exclusive right to use the registered

6    mark in commerce on or in connection with the goods or services specified in the

7    registration." 15 U.S.C. § 1115(a); *see also Brookfield Communications,* 174 F.3d at

8    1046–47 (finding that "[Plaintiff's] registration of the mark on the Principal Register

9    in the Patent and Trademark Office constitute[d] *prima facie* evidence of the validity

10   of the registered mark and of [Plaintiff's] exclusive right to use the mark on the

11   goods and services specified in the registration"). Accordingly, evidence of

12   registration of the mark at issue shifts the burden to Defendant to present evidence

13   which might challenge plaintiff's ownership, or the validity and protectability of the

14   mark. *Syntek Semiconductor Co. v. Microchip Tech.* Inc., 307 F.3d 775, 781 (9th

15   Cir. 2002); *see also* 17 U.S.C. § 410(c).

16   In this instance, Plaintiff Americeuticals' valid and current registration of the

17   "PERFECT PEEL" mark with the United States Patent and Trademark Office

18   constitutes *prima facie* evidence of the validity of the mark, as well as *prima facie*

19   evidence of Plaintiff Americeuticals' ownership of and exclusive right to use the

20   "PERFECT PEEL" mark in commerce in connection with its facial treatment

21   products. Exhibit "B" to Finger Decl. While this shifts the burden of production to

22   Defendants, as a matter of law no facts exist which put into question the validity of

23   the registered "PERFECT PEEL" trademark or the exclusivity of Plaintiffs'

24   ownership of and right to use such mark in commerce, satisfying the first element

25   for a claim under the Lanham Act.

26

27

28

HAMRICK & EVANS, LLP

1

2. **Defendants' Use in Commerce of the Same Mark for the Same Class of Goods is Likely to Cause Consumer Confusion**

2

3   Turning to the second element of the Lanham Act inquiry, Courts consider a

4   variety of factors in determining the likelihood of consumer confusion caused by a

5   defendant's use of the mark. In *AMF, Inc. v. Sleekcraft Boats*, the Ninth Circuit set

6   forth an eight-factor test looking to the similarity of the marks, proximity of the

7   goods, marketing channels used, strength of the mark, evidence of actual confusion,

8   type of goods and degree of care likely to be exercised by consumers, defendant's

9   intent in selecting the mark, and likelihood of expansion of product lines. 599 F.2d

10   341, 348-49 (9th Cir.1979) (abrogated on other grounds by *Mattel, Inc. v. Walking*

11   *Mountain Productions*, 353 F.3d 792 [9th Cir. 2003]). However, it has been noted

12   that these factors are not "exhaustive," nor do they constitute a "checklist;" instead

13   the *Sleekcraft* analysis is "best understood as simply providing helpful guideposts."

14   *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d

15   1025, 1030-31 (9th Cir. 2010).

16   Courts applying the *Sleekcraft* analysis have concluded that when presented

17   with products and services marketed on the internet, a narrower list of crucial factors

18   may be considered based on the unique nature of that forum. The Ninth Circuit has

19   opined that in such cases, "the three most important *Sleekcraft* factors are (1) the

20   similarity of the marks, (2) the relatedness of the goods or services, and (3) the

21   simultaneous use of the Web as a marketing channel." *GoTo.com, Inc. v. Walt*

22   *Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *Brookfield*

23   *Communications*, 174 F.3d at 1043, n. 16). Further, if evaluation of these three

24   factors supports a determination that consumer confusion is likely, the remaining

25   *Sleekcraft* factors need not be addressed. *Id.* at 1205, 1207-09 (after finding that a

26   likelihood of confusion was established by consideration of the "controlling troika"

27   of *Sleekcraft* factors, addressing each of the remaining factors—"only because the

28   parties raised them"—and holding that each one is of little or no assistance to the

HAMRICK & EVANS, LLP

1  inquiry); *see also Brookfield Communications,* 174 F.3d at 1054 ("Although some

2  factors—such as the similarity of the marks and whether the two companies are

3  direct competitors—will always be important, it is often possible to reach a

4  conclusion with respect to likelihood of confusion after considering only a subset of

5  the factors.").

6            **i.    Similarity of the Marks**

7            The first and most critical factor in the analysis is the similarity of the

8  trademark and the infringing mark, as it is axiomatic that "the greater the similarity

9  between the two marks at issue, the greater the likelihood of confusion." *GoTo.com,*

10  202 F.3d at 1206. Consideration of the similarity of the marks looks at three

11  principles: first, the marks must be considered in their entirety and as they appear in

12  the marketplace [citation]; second, similarity is adjudged in terms of appearance,

13  sound, and meaning [citation]; and third, similarities are weighed more heavily than

14  differences [citation]." *Id.*

15            The marks at issue in this case consist of exactly the same two (2) words –

16  "PERFECT PEEL." Plaintiff Americeutical's mark consists of the two words

17  "PERFECT PEEL," separated by a single space and spelled in the conventional

18  manner. Where the "PERFECT PEEL" mark appears on Plaintiff Americeuticals'

19  skin care products, it is printed in unembellished red font in a single line of text, and

20  displayed below the "New Youth" logo, enclosed in a blue circle. Defendants' mark

21  consists of the words "THE PERFECT PEEL," incorporating the words of

22  Plaintiffs' mark in their entirety, also separated by single spaces and spelled in the

23  conventional manner. Where the mark is displayed on Defendants' competing skin

24  care products, it is printed in unembellished white font in either a single line of text

25  or three lines of text, and displayed below a blue circle. The trivial differences

26  between the two marks cannot negate the fact that the marks are all but

27

28

PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE

HAMRICK & EVANS, LLP

1  indistinguishable in the marketplace, including of course phonetically. Such striking
2  similarity weighs strongly in favor of Plaintiffs.

3                          ii.    **Relatedness of the Goods**

4         Defendants' unauthorized use of the registered "PERFECT PEEL" trademark
5  is occurring within precisely the same class of goods sold by Plaintiffs, and both
6  products are marketed exclusively to the medical profession. It is well settled that
7  the public is more likely to be confused as to the source of related goods than
8  unrelated goods. *E.g., Maxim Integrated Products, Inc. v. Quintana*, 654 F. Supp. 2d
9  1024, 1032 (N.D. Cal. 2009). "Companies that offer products and services relating
10 to the same general field can be sufficiently related for purposes of granting a
11 preliminary injunction." *Id.*; *see also Fleischmann Distilling Corp. v. Maier*
12 *Brewing Co.*, 314 F.2d 149, 153–55 (9th Cir.1963) (finding that beer and whiskey
13 were sufficiently similar to create a likelihood of confusion in trademark
14 infringement action). Even where the two products are not identical, where both are
15 marketed on the internet it is sufficient for the moving party to show that a web user
16 would assume common sponsorship of both based on the similarity of the
17 trademarks. *E.g., GoTo.com,* 202 F.3d at 1206 ("Whereas in the world of bricks and
18 mortar, one may be able to distinguish easily between an expensive restaurant in
19 New York and a mediocre one in Los Angeles [citation], the Web is a very different
20 world.")

21        In this action, Plaintiffs and Defendants are direct competitors in the
22 marketing of dermatological-grade skin care products to the medical profession.
23 Moreover, the products at issue here are not only in the "same general field", they
24 are in fact substantially similar in both formulation and intended function. Both
25 Plaintiffs and Defendants use the "PERFECT PEEL" mark to designate their
26 competing skin care treatments, available for sale only to qualified skin care
27 professionals. Both products are dermatological grade chemical peels for the face,
28 neck, and hands, designed to give skin a more youthful and even appearance by

-10-

HAMRICK & EVANS, LLP

1  reducing the appearance of wrinkles, scarring, age spots, sun damage, melasma, and

2  acne. Moreover, Defendants' products rely on a formulation derived from the very

3  same product formulation used by Defendant Sebai's former employer, Plaintiff

4  Vitality, the current exclusive licensee of the "PERFECT PEEL" mark.

### iii.   Simultaneous Use of the Internet for Marketing

6  Courts have recognized that in the modern era, the likelihood of consumer

7  confusion is exacerbated by the use of the internet as a medium for marketing

8  products and services. *Brookfield Communications,* 174 F.3d at 1057. As the Ninth

9  Circuit succinctly explained in *GoTo.com, Inc. v. Walt Disney Co.*, "the Web, as a

10  marketing channel, is particularly susceptible to a likelihood of confusion since…it

11  allows for competing marks to be encountered at the same time, on the same

12  screen." *GoTo.com*, 202 F.3d at 1207.

13  Plaintiff Americeuticals markets its skin care products, including the

14  "PERFECT PEEL" products, on the website "www.newyouthskincare.com."

15  Defendants, in turn, market their products bearing the "PERFECT PEEL" mark on

16  the website "theperfectpeel.com." In performing a search on "Google.com" for the

17  terms "perfect peel kit," the top two results returned are links to Plaintiffs' website

18  and Defendants' website. Exhibit "E" to Evans Decl. Clearly, the use of the

19  registered "PERFECT PEEL" mark by both Plaintiff Americeuticals and Defendants

20  on skin care products marketed on their respective websites makes it highly likely

21  that consumer confusion will result.

### B. Injunctive Relief is Warranted

23  Having demonstrated a strong likelihood of success on the merits of its

24  infringement claim, a moving party must then establish that injunctive relief is

25  appropriate based on satisfaction of the following factors:

26  "(1) that [moving party] has suffered an irreparable injury; (2) that
27  remedies available at law, such as monetary damages, are
28  inadequate to compensate for that injury; (3) that, considering the

HAMRICK & EVANS, LLP

-11-

1

2

> balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by…injunction."

3

4

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006).

5

### 1.   Irreparable Harm

6

7

8

9

10

11

12

13

14

15

16

In actions alleging trademark infringement, a showing of a reasonable likelihood of success on the merits raises a ***presumption*** of irreparable harm. *E.g. GoTo.com*, 202 F.3d at 1209 ("From this showing of likelihood of success on the merits in this trademark infringement claim, we may presume irreparable injury."); *see also Brookfield Communications,* 174 F.3d at 1066 ("irreparable injury may be presumed from a showing of likelihood of success on the merits of a trademark infringement claim"); *Metro Pub., Ltd. v. San Jose Mercury News*, 987 F.2d 637 (9th Cir. 1993) (abrogated on other grounds by *Roe v. Anderson*, 134 F.3d 1400 [9th Cir. 1998]) ("Once the plaintiff has demonstrated a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted").

17

18

19

20

21

22

23

24

25

26

27

28

Because Plaintiffs in this instance have shown a strong likelihood of success on the merits of their claims under the Lanham Act, irreparable harm is presumed. Further, no facts exist which might rebut this presumption, as Defendants' ongoing acts of infringement, if not enjoined, in fact have harmed and will continue to irreparably damage Plaintiffs' valuable intellectual property rights. As a direct and proximate result of consumer confusion arising out of Defendants' unauthorized use of the registered "PERFECT PEEL" mark in connection with the marketing and distribution of Defendants' inferior competing products, Plaintiffs have suffered and will continue to suffer injuries including: loss of goodwill and reputation, loss of the goodwill and reputation associated with the "PERFECT PEEL" mark, loss of the ability to control use of the mark, loss of existing and prospective customers, and loss of ability to move into new markets.

HAMRICK & EVANS, LLP

1

2         **2.**    **Inadequacy of Remedies at Law**

3       A party is entitled to equitable relief where there is no adequate remedy at law

4 for the injuries sustained. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381,

5 112 S.Ct. 2031 (1992). Moreover, "[i]njunctive relief is the remedy of choice for

6 trademark and unfair competition cases, since there is no adequate remedy at law for

7 the injury caused by a defendant's continuing infringement. *Century 21 Real Estate*

8 *Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

9       In addition to the economic damages sustained by Plaintiffs as a result of

10 Defendants' acts, Plaintiffs stand to sustain substantial intangible injuries to their

11 goodwill, reputation, and future business opportunities. The value of such damages

12 would be difficult, if not impossible, to calculate, and in any event, no amount of

13 monetary damages could make Plaintiffs whole again after the harm suffered as a

14 result of Defendants' infringement. The inadequacy of legal remedies here weighs

15 heavily in favor of injunctive relief.

16         **3.**    **Balance of Hardships**

17       Where the harm threatened by a defendant's continued use of the infringing

18 mark is "significant and irreparable," such irreparable harm outweighs any

19 economic damage that defendant may sustain as a result of the issuance of an

20 injunction. *CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 617 F. Supp. 2d 1051,

21 1081 (E.D. Cal. 2009) (affirmed at 348 F. App'x 288 [9th Cir. 2009]); *see also Triad*

22 *Sys. Corp. v. Southeastern Exp. Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995) (noting that

23 a defendant engaging in infringing conduct "cannot complain of the harm that will

24 befall it when properly forced to desist from its infringing activities."). Even where

25 the injunction requires the enjoined party to recall or destroy inventory due to the

26 infringing packaging, the equities still favor the rightful owner of the trademark. It

27 has been noted that in such cases, "the requested injunction does not preclude [the

28 enjoined party] from engaging in its normal business activities, including

HAMRICK & EVANS, LLP

1 | manufacturing, promoting and selling a competing…product. Rather, the injunction
2 | only asks that [the enjoined party] refrain from using a mark…for its products which
3 | is confusingly similar to [the moving party's] trademark…" *CytoSport*, 617 F. Supp.
4 | 2d at 1081. Moreover, where a high likelihood of success on the merits and a
5 | probability of irreparable harm are established, the balance of hardships is of little
6 | significance. *E.g. GoTo.com,* 202 F.3d at 1209 (9th Cir. 2000) (finding that
7 | consideration of the balance of hardships is not required where the moving party has
8 | established a likelihood of success on the merits and a possibility of irreparable
9 | injury).

10 | The only hardships that Defendants could conceivably suffer in this instance
11 | is the restriction of their ability to wrongfully profit from their willful infringement
12 | of the registered "PERFECT PEEL" mark, "hardships" which will consistently be
13 | outweighed by the irreparable harm that Plaintiffs face. Further, even the prohibition
14 | of Defendants' further distribution of unauthorized products bearing the registered
15 | "PERFECT PEEL" mark would not interfere with the lawful conduct of
16 | Defendants' business; Defendants remain free to market their other skin care
17 | products which do not bear the infringing mark, and to develop and implement new
18 | packaging for the chemical peel products currently bearing the infringing
19 | "PERFECT PEEL" mark. In light of these considerations, the balance of hardships
20 | tips sharply in favor of issuance of an injunction.

21 | **4.  Public Interest**

22 | Courts have agreed that the public interest is served by avoiding confusion in
23 | the marketplace, weighing strongly in favor of issuance of an injunction in
24 | trademark infringement actions. *E.g. Maxim Integrated Products, Inc. v. Quintana,*
25 | 654 F.Supp.2d 1024, 1036 (N.D.Cal. 2009) ("courts often define the public
26 | interest as the right of the public not to be deceived or confused. [Citations]. In light
27 | of [a] finding of a likelihood of confusion between the marks…the public interest
28 | weighs in favor of granting an injunction."); *Cytosport*, 617 F. Supp. 2d at 1081

HAMRICK & EVANS, LLP

1  ("courts often define the public interest at stake as the right of the public not to be
2  deceived or confused.").

3      In addition to the harm to Plaintiffs resulting from Defendants' unauthorized
4  use of the registered "PERFECT PEEL" mark, consumers as a whole and the public
5  at large would be injured as a result of the confusion created by Defendants'
6  infringing use. The danger of such injury is heightened since both the mark and the
7  class of goods are in this instance identical. In light of the substantial likelihood of
8  consumer confusion, the public interest is best served by an order for injunctive
9  relief, specifically affirming the protection of Plaintiffs' own intellectual property
10 rights, as well as more broadly affirming the protection of rights afforded under the
11 Lanham Act.

**IV.**

**WAIVER OF BOND IS APPROPRIATE**

14     A bond may be minimal or not required at all under Federal Rules of Civil
15 Procedure, Rule 65(c) when the harm to the enjoined party is slight or where the
16 movant has demonstrated a high likelihood of success. *See, e.g., Diaz v. Brewer*,
17 656 F.3d 1008, 1015 (9th Cir. 2011) (finding no error in district court declining to
18 require any bond, noting the well settled proposition that "[t]he district court retains
19 discretion 'as to the amount of security required, *if any.*' [Citations omitted]).

20     Accordingly, Plaintiffs ask the Court to require no bond in this case, as
21 Plaintiffs have demonstrated a high likelihood of success on the merits with respect
22 to their copyright infringement claim, and the only harm to Defendants would be
23 that flowing from the restriction of their wrongful and infringing acts.

24     Further, to the extent that any bond is required, consideration should be paid
25 to the fact that Defendants have had actual notice of the infringing nature of their
26 use of the registered "PERFECT PEEL" mark since at least May 30, 2012 by virtue
27 of Plaintiff Americeutical's Cease and Desist Letter. Defendants' continued

HAMRICK & EVANS, LLP

28

-15-
PLAINTIFFS' *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND ORDER TO SHOW CAUSE

1  wrongful use of the mark in commerce and their refusal to develop and implement

2  an alternative, non-infringing mark since that time has been at their own risk.

3  Given Plaintiffs' showing of a high likelihood of success on the merits and

4  probability of irreparable damage, as well as the *de minimis* nature of the potential

5  harm to Defendants, Plaintiffs request that the Court require no bond, or, in the

6  alternative, only a minimal bond of One Thousand Dollars ($1,000.00).

**V.**

**CONCLUSION**

9  For the foregoing reasons, Plaintiffs respectfully request that this Court grant

10  this application in its entirety, enter a Temporary Restraining Order enjoining

11  Defendants from further use and exploitation of the registered "PERFECT PEEL"

12  trademark, and issue an Order to Show Cause why Defendants should not be further

13  enjoined from such conduct pending final disposition of this action.

15  DATED: April 23, 2013                    HAMRICK & EVANS, LLP

17                                             By:

18                                                 DAVID L. EVANS
                                                   REBECCA L. WORDEN
19                                                 Attorneys for Plaintiffs
                                                   AMERICEUTICALS, LLC and
20                                                 VITALITY INSTITUTE MEDICAL
                                                   PRODUCTS. INC.

-16-